The final matter, number 24-1148, Amanda J. Bazinet v. Beth Israel Lahey Health, Inc.  At this time, would counsel for the appellant, Mr. Chambers, please introduce himself on the record to begin. May it please the Court, good morning, Your Honor. Richard Chambers, Jr., representing Amanda Bazinet, who is the appellant. You want to reserve any time for rebuttal? Your Honor, I would reserve two minutes. Okay, two minutes. Okay, so then, let's proceed then. Your Honor, first, I'd like to point out to the Court that I recently argued a similar case before the First Circuit, and that case is Thornton v. Ipsen Biopharmaceuticals. That's still under advisement. Okay. Sorry, is that case related to your brief, I think, mentions, you know, your brief, which was filed a few months back, mentions another district court matter involving the same hospital and the same Title VII claim. No, Your Honor. There is another claim that is very similar. It's called McAfee on the counsel line case, and there's 30 plaintiffs in that case, and it's the same appellant defendant, and that case is still going forward. In the district court? Yes, it is. Is Thornton religious discrimination for not having taken the vaccine? Yes, it is, Your Honor. And when was that argued? That was argued, and it's under advisement. And how long ago? About three weeks ago. Okay. So that was argued in the June calendar? Yes. I just wanted to bring that to Your Honor's attention. Thank you. So, the case before the Court has to do with the appellee having a mandatory vaccination policy in effect, and my client, who is an administrative, she wasn't a nurse or a doctor. She had a deeply held religious belief, being a Catholic, and that belief had to do with that the vaccines themselves utilize aborted fetal cells in the research and development phase. So I had, as her attorney, amended complaint before the Court. It was pled two different ways, but count one was a violation of the free exercise clause of the First Amendment, and the last count was violation of MGL Chapter 151 and violations of Title VII. And the judge in the lower court, who was a different judge, all of these other, there's 31 plaintiffs that I represent, 27 were with a different judge, three were consolidated into that one, same counsel, and counsel did not attack Title VII in those cases. Those cases... But that case isn't, those cases aren't before us. What's before us here is this case. Yes, Your Honor. But in your complaint, I think one of the, it seems to me one of the problems the district court had was the complaint was broadly pled in terms of, or generally pled in terms of the religious basis. And the specifics that you were trying to get us to look at only come to light in this letter that I think comes to light right after the judge dismisses the claim. Is that right? Well, it is in part, Your Honor. So what happened here is we weren't given a, the appellee in this case did not file a 12-B motion to dismiss. We were not given a hearing date or oral argument. I was... What, there's no rule that for a motion to dismiss, you get an oral argument in a federal district court, unless there's a local rule or a standing order from the judge and I don't think there's any here in Massachusetts. Well, I just wanted to point out the difference with this case, Your Honor. So the judge, lower court judge, sent an ECF notification out that she was inclined to dismiss all the counts. She gave us an opportunity to file an opposition and to answer Your Honor's question, one of the issues that the lower court judge said is that we did not plead it sufficiently by just stating deeply held religious belief. That wasn't enough. And what happened is, in opposition, well, first, let me step back. In the complaint itself, I do plead that there was a process, that my client was a member or an employee and there was a mandate put forward and there were two ways to get around the mandate. One is you could submit a religious exemption and the other one is you could submit a medical. She did submit a religious exemption. It was very, I would say, it put them on notice. We're notice pleading. So you referenced, let's get right to it, you referenced the document in the complaint? Yes, Your Honor. The accommodation form? Yes. You then give that to the judge when, after she issues her order suggesting she might sui sponte dismiss it, your response is, here's the letter, here's the form that was in the complaint. And this is very particular. And tell me what you think the legal effect of that is under our case law. Well, I would submit the legal effect, I'm saying that the judge erred in dismissing the case, saying it wasn't, it wasn't pled with particularity because it was. Okay, so she says, she has alternative reasons. One is you were late in giving that to me. What's your response? Your Honor, I would submit that we weren't late because the complaint itself puts the court and puts the appellee on notice that this was your employee, you have that document, she applied for it, you know, you put on notice what her religious beliefs are and you denied them. Okay, because you, because you, I mean, do you think it's different had you not referenced that document in the complaint? I believe it could be, Your Honor, but we did. And secondly, I would submit that I think we should have been afforded an opportunity if the judge said there's not enough here to amend the complaint and she dismisses it with prejudice. Okay. And did not afford us the opportunity to amend it more particularly. And then she says, but even if I'm wrong about that, you haven't shown undue hardship. Yes, Your Honor. So even if she allowed us to eloquently plead it and it was all in there and she said, yep, you met that hurdle, which she says we didn't. She said it doesn't even matter because I'm finding that there's an undue hardship on this hospital. And that's an affirmative defense? Well, I don't believe it is, Your Honor, that for this judge to say, I think that's a matter of fact. Right. But it's actually not something you have to, well, I guess I'm asking this. Do you believe you have to plead that affirmatively? There is no affirmative defense or is that an actually something that is actually, there is no undue, I'm sorry, I didn't say that right. You don't have to plead the lack of undue hardship. That's something that the defense raises as an affirmative defense. That needs to be raised by the appellee, Your Honor. And in this case in particular, my client states her deeply held religious beliefs and moreover she was an administrator. She was not in direct contact with patients and she also agreed to mask and to test. And is the allegation at this point that there was no interactive process? Is that your allegation? Yes, that is. There was not. She admitted the form she filled out, putting them on notice of her Roman Catholic beliefs and why she believed there was an aberration to take the vaccine, it was against her religion. And there was no appeal, no face-to-face panel that she went in front of. It was simply summarily denied. Sorry, so when she suggests that she'll accommodate by testing and masking, that's in her papers that she filed? I believe it is, Your Honor. Okay. And according to the iterative processes, she says that. It's in my complaint. And they say no. And they say no. Yep. Let me just ask you, you mentioned again she's Catholic, that's her religious belief, but didn't the Pope during the COVID pandemic ask folks to vaccinate themselves because it was being Catholic just to make sure nobody else got this pandemic? Yes, Your Honor, the Pope put out a kind of like a press release and he said it was an act of kindness. That's what he said, yes. But what he says is, and I believe he later corrected that or amended it and said that because it affected a lot of people, he said it's really an individual choice. Do you think it matters what the Pope says? Well, I think it matters to a lot of Catholics, Your Honor. I mean legally right now in this case, it doesn't matter what the Pope says. No, I think when you talk about a deeply held religious belief, it's internal in the person themselves. Whether they follow their parish priest or whether they just have a deeply held religious belief, that's between them and God. Let's assume she doesn't agree with the Pope, but she's still got Catholic beliefs, but doesn't she need to spell that out more than simply say my deeply held religious beliefs and give an explanation? I don't believe she does, Your Honor, I think... Because then everybody could simply say, oh, because of religion, I'm not going to get vaccinated. Well, they could if they didn't have a deeply held religious belief, but she says I have a sincerely held religious belief. It was a process. She says I'm a Catholic. This is why I'm opposed to it. And I believe in this case that that is enough. And your letter is in more, I mean, your complaint is pretty thin. You agree with that? The actual words in the complaint? Judge, I believe that it was crafted to put the defendant on notice, yes. And that's why I would, had I had a whole argument, I would have asked leave to amend the complaint. But the letter says quite a lot. But the letter is very particular. The letter, again, you can attach, there's no issue with filing a complaint and attaching a letter to a complaint. That wasn't done. And the reason that, Your Honor, wasn't done, I believe, is because when this first happened, I got hit with hundreds and hundreds of people that filed with EEOC or MCAT, and in this case and many, many others, we had 90 days to file all these complaints. Everyone received a right to sue from the EEOC, 90 days. So at that time, we didn't know, we just wanted to get these filed and get the defendant put on notice. But it wasn't, but it was, just to clarify, even though it wasn't attached, it was specifically referenced? It was, Judge. Thank you, Your Honor. Thank you, Counsel. At this time, Attorney Spinelli, I think, is going to argue for four minutes. Thank you. I would like to please the Court, Joseph Spinelli, I also represent Amanda Bazenet. Good morning. I just wanted to touch on two, before I start my argument, which is about the sua sponte dismissal of the case by the court, the judge in the district court. I believe, directing to Your Honor's question about the test, in page 30 of the supplemental amended appendix, I'm sorry, is the actual order from Judge Kelly down below in which she says what she believes the test was and that she crafted her argument on. There's two parts of it. One is the plaintiff making a prima facie case that a bona fide religious conflict existed, which was the reason for the adverse employment action. And then, if that's satisfied, the burden shifts to the employer. So it is not our obligation to raise the issue of... Right. But we do have a case called Lowe where we said, nevertheless, we can dismiss, it's appropriate to dismiss on both these six grounds where the success of that defense is so obvious from the pleadings that that ends the case. So what's your response to why this isn't Lowe? My response to that is, again, citing the judge under the Gonzales-Gonzales case. It says that a sua sponte dismissal, which is different from a general circumstance because the judge did that on her own where the parties, the appellee did not raise the issue under Title VII. On the sua sponte, it has to be crystal clear that the plaintiff thought... But she initiated the process sua sponte, but the process played out in the traditional way. She didn't dismiss it. She said, write me a brief, tell me why your complaint's sufficient. Thank you. Write me a response telling me why they're wrong. So at the end of the day, she didn't just say, oh, I don't like this complaint, I'm dismissing it. She got briefing from the parties and made a decision on a fully briefed matter. Yes, she got the ball rolling. I'm not sure that's what we mean. I disagree on two counts on that, Your Honor. First of all, in the ruling that she had, she said that that's what she was going to do. In the subsequent ruling, after the briefs were there, the words are actually, as I said I was going to do, I dismiss. Right. However, there was process in between those two things such that everybody had a chance to argue about the sufficiency of the complaint. Do you agree with that? I do not. Okay? I agree that there was a process given, but not to the extent that Your Honor said. We had asked for the ability to put in an amendment to the complaint. Specifically, Gonzalez-Gonzalez says that it has to be crystal clear. Judge Kelly went on and indicated on page 31 of the appendix that even if the plaintiff had met the burden on a deeply held religious belief, it is likely. Now, you're talking about crystal clear. Crystal is a very dramatic word that's put there. It's not clear. It's not maybe. It's crystal clear. Well, if we give you discovery on undue hardship, what do you want to do? What are you going to try to show? We would try to show that there was not undue hardship, and let me say it this way, Your  What do you understand that to mean? What are you going to try to show? We understand that to mean that we would be asking, we believe that there were people that they did give exemptions to. This is a religious situation. So the religion is something in the mind and in the heart. It is not something that is capable in any way, shape, or form to give a virus but to receive a virus. I understand the hospital says that they didn't give religious accommodations to people who have to report to work, that if you were not working at home, then you couldn't get a religious accommodation. Do you dispute that she could have been working at home? I don't think that applies here at all, Your Honor. Could this woman have worked at home, in your view? Do you want to prove that in discovery? I believe that she could have. She was an administrative person. Did she not have to see patients? I believe that she absolutely could have done that, Your Honor. And I think Judge Kelly, in the citations in her second opinion here, she cites two cases. The undue hardship is a case-specific, fact-intensive question. It has to be vetted out through discovery. It's not something that can just be said that, oh, these two cases, which is what she did in her opinion, dealing, dispensing with undue hardship. And she cited the Together case. She cited it at its initial stage, not the summary judgment stage, which did the opposite of what she said in her quotation here. And she cited Loewe v. Mills. Both of those cases, the judges in both of those cases made it very clear that the issues of undue hardship, these exemption issues, would be taken by the individual person. And I believe if we were discovering this case, we'd be entitled to find out if they did it to anybody else. If anybody else got that, there would be no way that they could distinguish one person versus the next person when the issue is in their head or their heart. Zero. And I believe that, in a footnote, Judge Saylor said in the Together case, they would have been better off if they didn't give it to anybody, referencing a paragraph that he was dealing with that made it clear that the argument that I'm saying here, you just can't do it that way. I think also, when you get into the Prima Fasci case, as the judge did in her order, the Savelle case, which was part of our supplemental submission yesterday, is very clear that the Prima Fasci case is an evidentiary standard, not a pleading requirement. I believe that Judge Kelly looked at it as a evidentiary standard and actually went in and tried to determine this case. Though it's supposed to be case-specific on the issue of undue hardship, which is why she dispensed with Title VII, she went and dealt with it that way. And I don't believe that she could do that. Counsel, let me ask you. In this case, there was a complaint that it was an amended complaint. Then it gets dismissed, correct? That's correct. After the dismissal and the entry of the judgment, did you ask to, it was the dismissal with prejudice, but did you ask, your honor, may we further amend the complaint or anything? Or no such motion was filed after the judgment? That was in the body of our submission to the court. I believe it was in both our initial opposition to the motion to dismiss. It was most certainly in the supplemental. OK, but once it gets dismissed and there's a judgment, no motion for reconsideration or we're submitting even an additional complaint, amended complaint, second amendment complaint, that was not filed, correct? That was not filed. We filed this appeal. OK. Let me also ask, there's an issue that you bring up. There's an agreement, or there's a purported agreement between you and opposing counsel to allow you more time to submit the case to the judge. But what happens is the judge was never privy to that agreement and she dismisses it. Are you still raising that claim? I'm not sure. I don't understand that question. I don't believe that that's something that we said. Your first argument is that the judge could not go through this sua sponte process because there was some sort of agreement between you and the hospital that the hospital would not raise a motion to dismiss. I think the answer to that is a motion to dismiss is a legal question. Whatever you folks may have decided about is a legal question. It's up to the judge if she thinks that the case is illegal. But that is an issue that's been raised in the briefs. That issue, I understood it differently from what your honor was asking. I would cite the U.S. v. Campbell. I believe it's an 11th Circuit case. Let me just ask you this. You say in your brief that the parties can stipulate as to facts. That's sort of what you say in the brief. Do you agree with me that a 12b6 motion is not a question of facts, it's a question of law? I think the way that it was done here, facts were brought into it. I agree that it shouldn't have been that. If I went into Westlaw and looked up 12b6, am I going to find it's a question of law? A 12b6 motion, the standard of review is that it's a question of law. I think that there would be questions of an argument on what is contained in the document, so forth. Okay, but it's a document. But if it's filed for purposes of, what I'm saying is, the parties can agree, and this is my prior practice, 15 years plus as a district judge, usually the parties can agree, let's have these deadlines. We would request oral argument, we would request this. You submit it to the court and then the court will usually approve it. But if it's an agreement and it's not presented to the court, then the court is free to act on its own and is not bound by that agreement. Would you agree with this? I would agree that what you say has merit, but again, I would cite U.S. v. Campbell, you know, that there was a holding that where the issue was not brought in the initial pleadings, it was forfeited. Okay, so we believe that the fact that it wasn't brought there means that it was forfeited. But you know there's a whole bunch of First Circuit law that says, I know you talked about they allow sua sponte dismissals. By definition, the defense didn't raise it, the judge did it. So the only difference here is you're claiming some sort of agreement that that doesn't seem to matter. The sua sponte dismissals, Your Honor, that I saw in the case law mostly had to do with jurisdictional issues or issues that had to do solely with something that the judge could do on their own and didn't affect the parties. But there's no coloral claim under the law. So that's something the judge can say, there's no claim. I think that Judge Kelly admitted that there was a claim by talking, using the word lightly in the face of Gonzales-Gonzales, where she cited right before it that it had to be crystal clear. I think Judge Kelly knew that there was an argument and she decided that she wanted to dispense it herself. It wasn't argued. There's, you know, I believe that the issue was waived for the purpose of that hearing. I believe that the sua sponte argument, you know, it wasn't crystal clear that we wouldn't be successful. And it deserves to be back for discovery. Thank you. Do you want to take any questions? No, thank you. Okay, thank you. Let's hear then from Mr. Roberts for the appellee. May it please the Court. Scott Roberts for the Defendant Appellees. I'd like to take a moment, just if we could, to set the context for where we were three years ago, because it's going to be particularly relevant to the issue of undue hardship. In August of 2021, 600,000 Americans were dead. Well, here's the issue. I think we know a lot of that. The judge here made a decision and granted the motion to dismiss on the issue of undue hardship. Correct. And there is, the Supreme Court has told us that's a fact-intensive inquiry. It's an iterative process, all of these things. Why was that decision correct on that particular issue? Thank you, Judge Montecalvo. The reason on that particular issue is because the policy that we've put together reflects exactly the analysis that the hospitals did on the issue of undue hardship. Case law has recognized that that can be clear on the record, and here the record is- There is no record. There's a complaint. Well, there is in this case, Your Honor, because this Court can affirm for any reason that's clear from the record. No, no, no, no, no, no. That record changes as we go through the process. We are at the 12B6 stage. The record at this point are those things that are fair game for that. That's all good summary judgment material you're going to tell me about, but the question here is why at this early stage? And I, what's the answer to that? I'll get, and I'll come right to it. Your Honor, you just now heard Appellant's counsel reference repeatedly the letter that she put out there. What is also referenced repeatedly in the complaint and was before the judge below was the actual policy itself, and that policy itself explains the entire interactive process, how it's going to work, and it explains why, if you're a person who works in the hospital, if you have contact with patients, members of the community, student volunteers, whatever, if you come forward with a request for a religious exemption, that there's going to be a finding of undue hardship, and it lists 14 factors related to health, safety, and operation. And did people get medical exemptions who were in-person workers? For those who were in-person, first of all, I want to point out, Judge Afrin, that that's a very different standard under the ADA than it is for religious accommodation. Yes, people were granted medical exemptions. Do you agree with me the law has changed between when you made this decision and now about how we think about religious exemptions? I agree with you that the Groth decision, Your Honor. And that applies, right? It absolutely does. And here we look at that with not the de minimis, but the substantial. And here, Your Honor, looking at those 14 factors, indeed looking at the allegations of the plaintiff's own complaint that don't even address the 14 factors. You submitted an EEOC letter, I saw it in the record, and that lays all of this out. And I understand, I don't have an opinion about it, but you lay out why you claim to the conclusion that you did. But that EEOC letter that lays out your view of why undue hardship was met doesn't seem to be ripe to be part of the discussion right now. Oh, and respectfully, Your Honor, I disagree, because I'm not relying on the EEOC letter. It is part of the record. I put it in in response to an allegation below that somehow we'd never contested the sincerity of religious belief when in fact we had, which is why we presented that document to the court. Okay, so then what are you relying on? What I'm talking about is the policy, and the policy makes it clear. We have a case law from the circuit, we have Loewe Mills recognizing this. All right, so Loewe Mills, when it's on a 12b6, it's the following situation. A Maine statute says there will be no religious exemptions, and therefore, if you, Maine Hospital, give a religious exemption, Maine authorities may come and take your license. And the court says that sanction that's hanging out there over the hospital is a sufficient undue hardship. Now, you don't have that, right? Massachusetts didn't do that, correct? Massachusetts didn't do that, but if I can say what the plaintiffs allege and how they frame the issue in their complaint, they state that we put that policy in place, that mandatory vaccination policy, the fourth paragraph, their complaint, that the defendants would lose governmental funding, which is a key component of the essential, and essential to the functioning of the hospital. In Loewe Mills, what did they talk about? The possibility of fines, the possibility of loss of licensure. These are the plaintiff's own allegations. Now, the plaintiff's own allegations, by the way, the notion that somehow she should have, could have done the work from home, she has never said that. To the contrary, in the complaint, what she says... Were you engaged in any process to figure out whether that would have worked? We absolutely did say, this is our process. We went through it, and we explained to her in our response, because the essential functions of your job require you to be here in person, you have to be vaccinated. So you decided that she can't work at home. She never asked to work at home, Your Honor. The question that she always said, and it's from the complaint as well, is somehow she says, I want the alternative measures of masking or testing. She says in her complaint, this is her assertion, without employees such as the plaintiff, working at the defendant's facilities, working at the defendant's facilities, and being directly exposed to the risk of contracting COVID-19, the defendants could not have operated and would have suffered financial ruin. She places herself there. She has never said, never alleged, until we just heard it a moment ago, that somehow she could work from home. Okay, and how do we... I mean, how do we know that masking and... I mean, you're telling me those are no good. And that may be the hospital's conclusion, but the hospital doesn't ultimately decide what an undue hardship is. We have to... I mean, it seems to me that maybe you can prove that, but what exists right now? I mean, we're at the earliest stage where nothing yet has really happened. It's an affirmative defense. They don't have to say a word about undue hardship. Honor, correct. Right? So... Absolutely correct on the notion, on the notion. It is, it is an affirmative defense. And sometimes, Your Honor, the facts are so clear from the complaint and from the documents that are incorporated and referenced in the complaint that there's really nothing left to talk about. Now, on the decision by a hospital... One of your problems is, when I first read this case, I just assumed the plaintiff was a doctor. No. And she's not. She seems to have administrative duties. Correct. Some of which involve interacting with patients and other doctors, but many of which don't. And so I guess, just at this early stage, I don't... I'm having a little bit trouble seeing the grant of the motion to dismiss from your perspective. Oh, if I can, Your Honor. This is a hospital. It's not a court. Now, in April of 2021, I came into this courtroom and I tried a case. And I was masked, and I had a plexiglass up, and the witnesses were barred, and all of that happened, and there were procedures... Did every hospital take the same position you did? Do you know that? Pardon me? Did every hospital take the same position you did on how you implied your mandate? Every hospital that's part of BILH certainly did. Okay, what if they had record? What if they could produce in discovery that many hospitals were able to handle this situation differently than you, such that it wasn't really an undue hardship? You guys were just pretty narrow in how you thought about it. What if they could prove that? Might that not go to the undue hardship problem? First of all, I don't think they would be able to, quote unquote, prove it, Your Honor. They could argue that. But at the end... Wait, but we're in court, right? So their goal, right? They haven't even had a chance to develop that. Right. But on the issue of undue hardship, and this has been recognized in other cases as well, there is deference given to the medical healthcare providers who are charged with this. I mean, somebody could come in to me and say, hey, I think everybody in the hospital should just be masked. Right, but assume the facts come out. It's so great for them. Every hospital in Massachusetts made a different decision than Beth Israel made. Just assume that, because I don't know what the discovery is going to show. Might that not be important to figuring out later whether you were able to prove undue hardship? No, it would not. Because if this hospital made this decision based on, let's remember now, 18 months of being in this pandemic, and what was going on in their circumstances and on the ground, and they said, this is what we need to do. We can grant religious exemptions to those who might be able to work remotely. We can grant medical exemptions as required because they are different. But for those people who are here, who interact not just with doctors in the emergency room and the like, but interact with those doctors, who interact with members of the community, who ask coming in, how do I get to this office or the like, those people needed to be vaccinated too. And they made the calculated, clear, informed decision. And again, I commend to your reading the policy that is put in place because it makes it very clear. This was a serious discussion. Why didn't you move to dismiss the religious discrimination claim? Your Honor, because at that stage of the game, I thought, I've got so many claims here that are easy to knock off, assault, constitutional claims, et cetera. I took my shot at those. And that's what I, and I do have to address. The notion that there was ever some agreement that I wouldn't touch a Title VII claim is entirely bogus. It never happened. I had a 7.1 conference on the four ones I was going to dismiss. That doesn't seem that important to me. But what does seem interesting to me is, you said, I took the shots. But now you're telling me, but we have the shot. We win. But why didn't you do that? Now, once I heard what Judge Kelly said below and what the concerns were, I thought, fine. You know what? It is the case that a sincerely held religious belief has not been pled with the requisite clarity. Do you agree that the letter under this circuit's first 12 v. 6 jurisprudence is fair game because it's referenced? I think one of your footnotes says yes. And I wouldn't stand in the way of it. I will say, it doesn't say what they claim it says. Nowhere does it say she is Catholic. Nowhere does it say abortion is a sin. None of that. Well, there is a whole letter that says, this is against my religious beliefs. And then it cites various pieces of scripture. It says, this is my conclusion. Do you agree that, of course, it doesn't matter whether it's part of some organized? I mean, as long as she says, you can litigate sincerity, that's fair game to litigate. But at this stage, there is evidence that this is a religious belief she, not evidence, there's pleading that there's a religious belief that she has. I think she has tried to plead a religious belief. And the thing that takes it out of that, Your Honor, because remember, it has to be sincerely held by three words. And those three words are, at this time. But that made complete sense to me because the next sentence is, the currently available vaccines use the aborted fetuses. So, they don't, Your Honor. Right, but that's, but we can't know that. No, but we can. What if that is her sincere belief? She may be totally wrong. You know, today, maybe the scientists can tell that's impossible, it doesn't happen. But at that same time, isn't that a sincerely held belief? Look, I can't explain what I think is the difference. If Ms. Bazinet had said, I sincerely believe that if I take this belief, take this vaccine, I will not get into heaven. That is a matter of belief, not something I could stand here and try to disprove. If I say, I'm not going to take this vaccine because it offends me, because it is made of aborted fetuses, when as a matter of fact, it is not. And you can prove that. And that may go to important issues in the case. I don't question that. But right now, we don't know anything. I mean, we don't know anything in the sense of how litigation in federal court works, which we are limited to a complaint at this early stage. And so these things are interesting, potentially relevant. But they don't, they seem to be prematurely coming up in this case. With respect to that last point, Your Honor, I do disagree. That is something I think that is susceptible to judicial notice, that these things are not made of aborted fetuses. You can go to the CDC's information on that. And these are the kind of things you can take judicial notice of. But my reading of those at this time is just that. Maybe someday I'll change my mind about this. Is it equally plausible that if different vaccines existed, my religious objection might dissipate? Isn't that an equally plausible understanding of that language? I do not read it that way, Your Honor. And I would concede the point to you if I did feel that that's what it says, but I don't feel that that's what it says in the context of that document. I will say that this is why I focused initially on the issue of undue hardship, Your Honor, because I think that often talking about sincerely held religious beliefs does get down to angels dancing on the head of a pin. And whether angels exist and could they dance if a head of a pin existed. But on the issues of undue hardship, and this is where Judge Kelly made the point, which is even if I take that letter that you gave, which says what it says, and not quite what they say it says, this would be an undue hardship here. And on this record, consistent with Lowe v. Mills, this is a situation where the court could fairly conclude it, and it's not a situation where this hospital or any other- Let me go back briefly to the undue hardship, because if we're at a 12, that's a defense. I'm sorry, Mr.- Undue hardship is a defense. Correct. So at a 12 v. 6 pleading, the court, what it has to look is, as a matter of law, if that claim is viable, not look at defenses. I, Your Honor- And you agree with that? No, I disagree with that. So the judge could look at possible defense and say, well, here's a, because one thing might be it's obvious, the statute of limitations has expired. Somebody filed, like, that is, you know, it's, but aside from an example like that, this is very different. This is an undue hardship. You have to prove it. Or, you know, for purposes of prevailing, and again- And this is where I do come back to Lowe v. Mills, which says just that. It is an affirmative defense, but sometimes the record can be clear that it is an undue hardship. And here, Your Honor, as I said, we have a complaint. I'm happy to have it incorporate the letter if that's what they wish. But the policy that they reference, I believe, 14 times, ought to be considered as well. And when it is, there isn't a question. It is clear, which is what the language is in Lowe v. Mills, that an undue hardship existed. And it's not something that should be second-guessed, because maybe somebody else did it a different way. This hospital made an informed decision for the good of its employees, for its patients, for its community. And that is a correct decision. And I'm going to ask that this panel please affirm that decision. Let me just ask, you know, because when I'm looking at the order, it's a docket order, entry order. It says there is no accommodation that plaintiff could have offered that would not have caused them to suffer an undue hardship. Wouldn't they be allowed to at least rebut that, or at least proffer something? Because, you know, one of the things they said, well, maybe this plaintiff can tell her work, or there may be other options. Or we can put her in another building, or in some other place. And, you know, I don't know. Literally, Your Honor, the first time that point has been made was just now. The brief is in their complaint focuses on two things, masking and testing. And they essentially say, because you did that before, you have to do it forever. And when we come forward and say, you know what? Vaccines are the way that we can ensure the health and safety. And those alternative measures, this is exactly what it says in the policy. Alternative control measures such as masking, testing, and social distancing, working in another building, are less effective than vaccination at preventing the transmission of COVID-19 and influenza. That was a decision for this hospital to make. And it made it appropriately. And it could fairly conclude, and did conclude, that it would pose an undue hardship to do anything else. So what you're saying is, from the district judge's perspective, she can consider that at the time based on that policy and say, well, that policy is out there. And the way it's been, and again, it's a little hard to understand, but you. Your Honor, if I can, because in fairness to what the record reflects, Judge Kelly looked at the macro picture. This caused a horrific health crisis in this country that put many, many hospitals on the brink. That's what she talks about. And yet, the Supreme Court has upped the burden on employers when it comes to religious discrimination claims. And I'm not telling you that I know who wins or loses. But that has changed. The law is not de minimis. It is something significantly more than that. It is, the Supreme Court tells us it's fact specific. You can have substantial or at least significant costs related to this. That strikes me as the kind of thing that needs to be worked out. Again, Your Honor, I respectfully disagree with you. Because even if we take Judge Kelly's more macro view, this court can affirm for the reasons that are in the record. And the policy is in the record. And on a micro level for this hospital, that undue hardship is evident from the record. It is clear as low as it gets. Let me ask you, at the time she decided this, these Supreme Court cases, my colleague has mentioned, were not there. But we have to apply that. So under this standard, perhaps Judge Kelly did not have that at the time. But don't we have to apply that? No, respectfully, Groff preceded the decision. So if you look at the opinion, while she does not cite Groff, she looks at the overall context of the situation. That is what we have to look at here. And using the plaintiff's words, the overall context of this situation is a hospital deluged with plaintiffs in a crisis. With patients, you mean? Deluged with patients? You said plaintiffs. I hope not. Deluged with patients in an operational and health crisis. That's the context that we're talking about. OK. Thank you. Thank you. Plaintiffs, appellants have two minutes rebuttal. Whoever wants to take the two minutes, please go ahead. Identify yourselves. It's Attorney Spinelli again, Your Honor, for Amanda Bazinet. What's interesting, I think this probably happens in front of Your Honors fairly often, is the more that argument happens, the more that you see that there are issues of fact that need to be ferreted out in the- Or it's happened vice versa also. We're not prejudging the case, though. Very well, good. But I guess in your case, you want to say in this case, it's become more apparent that- And I do say it in this case, Your Honor. Thank you. But I think that, Your Honor, my brother counsel over here started talking a lot of it about the state action and what the government was telling them to do. I would ask, Your Honor, to consider that if you're considering that argument, you have to consider that his client was a state actor, OK? And look at the other counts that Judge Kelly dismissed in a different way. Because if he's going ahead and arguing that Beth Israel was kowtowing to the government and doing what they told him to do and acting in that behalf, then that meets the test of- That's beyond this appeal, so. Yeah, I didn't hear that argument. I'm just addressing what was said, Your Honor. It was dramatically said about what was happening during those 18 months. What's missing from that is the fact that these same hospitals, for the same reason that he said, facing financial ruin possibly, went to all of these employees and said, if you wear a mask, you're safe. If you take tests, if everyone takes tests to see if they have COVID coming in, you're safe, OK? They can't sit there now and say- I mean, they almost chastised my client for talking about masks and different PPE and so forth. When that's what the hospital, that's what the defendant, the appellee said to these people as part of why they should come to work. They put themselves at risk to come there based on that. And I would say Your Honor was correct in pulling out paragraph 28 of the complaint. My client said that there was no meaningful interactive process. At an interactive process, it's not a, we're going to give you a list of 18 things that were from in there. It's supposed to be interactive. This is what goes on. This is what's here. What can we do? And those things would have come out.  I just have one last question to ask. You mentioned when you argued earlier that the complaint was perhaps could have been more detailed, but you had like 20-something more plaintiffs. And you had like the EOC deadlines, 90 days, and to file, that's correct what you said, correct? That's what my brother said. Our colleague, Judge Celia, and not in this COVID context, but many years ago, and he used the phrase many times, he said, well, if counsel have too many fish to fry, that is still not an excuse. So even if we don't consider that, you had all these other cases, and again, that's not in the record. You tell them that. You still feel that you've pleaded enough facts, correct? I think we did. I think we did. Even though you have too many fish to fry, you think in frying fish, you've filed the appropriate, you met the burden, at least in this case. Your Honor, I didn't make that statement. If I were here making this statement in that context, I would have said that we relied on the standard of notice pleading. We relied on the fact that we referenced the documents that were there. We took a look at the case law at the time, which said what's important is to state that you have this claim. And one of the parts were that the defendant at that point had to be on notice of it. We indicated very clearly that they were on notice and what it was. And the reason that that came in at that time is because Judge Kelly said she wanted us to plead that. We weren't given the opportunity to amend the complaint. We were given the opportunity to argue there. So we put it in. The appellee put things in there. And the appellee's counsel just told you he was OK with counting that as part of the complaint. So I believe you know. OK. Thank you. Good afternoon. Court is adjourned until, I guess, next month.